UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:17-cr-00098 |
| FREDERICK HOMER WHITE, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is Frederick Homer White's Motion for Compassionate Release (Doc. No. 35). Mr. White has served 37 months of his 57-month sentence for bank robbery. Now 60 years old, he argues his high blood pressure and upper respiratory problems, when combined with other health issues and the threat of COVID-19, are serious physical or medical conditions that justify his early release from custody. (Id. at 10; Doc. No. 46 at 1–3.) The parties agree that he has exhausted his administrative remedies, (Doc. No. 40), so his Motion is properly before the Court and it is ripe for decision. (Doc. Nos. 44 and 46).

Mr. White pled guilty in November 2017 to bank robbery. (Doc. No. 20.) The established facts from his plea colloquy reflect a bank robbery involving no weapon or the use of force. He entered a bank in the middle of the morning, approached a teller, and handed her a note to "start handing over money." Mr. White exited the bank with $6,144 in cash.

The Court accepted Mr. White's binding plea agreement under Fed. R. Crim. P. 11(c)(1)(C) recommending a below guideline sentence of 57-months imprisonment. (Doc. No. 20.) This was an appropriate sentence for several reasons, including his age, military service, and his progress toward addressing his drug addiction. (Doc. Nos. 34; 34-1 at 2–3.) The Court has received a report

from U.S. Pretrial and Probation Services that while in custody Mr. White has no disciplinary infractions, completed both drug education and drug treatment classes, and completed classes in nutrition, cabinetry, history, development, finance, resume writing, spanish, plumbing, hospitality, electrical trade, and customer service.

Mr. White suffered from several medical conditions at the time of sentencing, including high blood pressure, a fatty non-cancerous "softball-size tumor on his left hip," and recurring back pain and arthritis. (Presentence Investigation Report ("PSR") ¶¶ 88–90.) His existing health issues have deteriorated while in custody and he has been diagnosed with new health issues. His high blood pressure is "mainly borderline high most of the time" and fluctuates day-to-day. (Doc. No. 43 at 14.) Even after his medication changed, his high blood pressure continues to be problematic. (Id. at 16, 25.) While in custody he was diagnosed with an "acute upper respiratory infection, unspecified" that persists today. (Id. at 25.) He constantly feels like something is caught in his throat, so he has a cough, difficulty swallowing, and violent coughing fits, notwithstanding medication. (Id. at 14, 24–25, 60; Doc. No. 35-1 at 8.) He was diagnosed with a deviated septum, (Doc. No. 43 at 60), and he was also diagnosed with macular degeneration, which may be due to his high blood pressure. (Id. at 25, 30). There is an ongoing health issue involving his left hip, which has been characterized as "abnormal" and a "bony exostosis" extending from his left sacrum that "could represent an osteochondroma."[1] (Id. at 3, 9, 56).

## I. ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), the Court is authorized to grant compassionate release and reduce a defendant's sentence if, after "considering the factors set forth in section 3553(a) to

---

[1] An osteochondroma is a noncancerous bone growth. Conditions and Disease: Osteochondroma, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/osteochondroma#, (last visited Aug. 5, 2020).

2

the extent that they are applicable," the Court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The policy statements identify "extraordinary reasons" for release that include, as relied on here by Mr. White, the "medical condition of the defendant" when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A)(ii).

A condition from which he is not expected to recover means a chronic condition. United States v. DeMille, ___ F. Supp. 3d ___, 2020 WL 2992190, at *2, *4 (D. Or. June 4, 2020) ("a chronic medical condition (i.e., one from which a defendant is not expected to recover) reasonably may be found to be both serious and capable of substantially diminishing the ability of the defendant to provide self-care within the environment of a correctional facility"); see also United States v. Readus, No. 16-20827-1, 2020 WL 2572280, at *2 (E.D. Mich. May 21, 2020) (identifying high blood pressure as a chronic disease which does not offer an expectation of recovery). The "serious" condition need not be terminal. A terminal illness is separately delineated in the policy statements, U.S.S.G. § 1B1.13 n.1 (A)(i), and "terminal illness" is specifically omitted from the Sentencing Commission's definition of a "serious physical or medical condition" so, impliedly, a "serious" condition does not need to be a terminal condition. Id. § 1B1.13 n.1(A)(ii). As reflected in the decisions of many courts since this pandemic began, a serious physical or medical condition that inhibits self-care in prison is one not adequately managed in prison that places the inmate at a serious elevated risk of infection and death from COVID-19 from which he cannot protect against while in custody. See DeMille, 2020 WL 2992190, at *2; United States v.

Arreola-Bretado, ___ F. Supp. 3d ___, 2020 WL 2535049, at *4 (S.D. Cal. May 15, 2020) ("Designating the particular medical threat posed by COVID-19 and [pre-existing] conditions as extraordinary and compelling is consistent with a policy in favor of releasing inmates with serious medical conditions."); United States v. Jepsen, ___ F. Supp. 3d ___, 2020 WL 1640232, at *4–5 (D. Conn. Apr. 1, 2020) ("An inmate's [mere] diagnosis of a chronic condition does not constitute an 'extraordinary and compelling' basis" but may if the inmate suffers "chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19").

### Serious Physical or Medical Condition

The Court finds that Mr. White suffers from a serious physical or medical condition. His medical records establish that his high blood pressure is very serious because it is constantly high, even after changes in his medication. (Doc. No. 43 at 14.) This leads the Court to find that his high blood pressure is not well-managed or well-controlled in prison. This more likely than not is contributing to his macular degeneration, which is often caused by high blood pressure. His poorly controlled high blood pressure may increase the likelihood of serious risk from COVID-19. Mr. White also suffers from an acute respiratory infection and his throat discomfort and serious cough have persisted for over one year. (Doc. No. 43 at 14, 25.)

Mr. White's health has declined since he was incarcerated in 2017. His high blood pressure, macular degeneration, and acute respiratory infection are serious illnesses that, when combined with his age at 60 and other health problems, place him in danger should he contract COVID-19. Many courts have held that compassionate release is justified when an inmate suffers from preexisting high blood pressure that increase the likelihood of a lethal COVID-19 case, especially where there are additional factors that enhance the defendant's risk. These courts acknowledge that the danger of COVID-19 from high blood pressure can be a "serious medical or physical

4

condition" and they further agree that inmates are unable to provide self-care to protect themselves against this life-threatening risk in a prison setting. See, e.g., United States v. McConico, No. 15-20267, 2020 WL 4431424 (E.D. Mich. July 31, 2020) ("Courts in this [Circuit] have found that there is sufficient scientific evidence of a comorbidity between hypertension and COVID-19 to justify release from custody for vulnerable inmates."); United States v. Anderson, ___ F. Supp. 3d ___, 2020 WL 2521513, at *5 (C.D. Ill. May 18, 2020) ("Defendant suffers from hypertension, a condition that increases the serious risks that COVID-19 presents for Defendant."); United States v. Ullings, No. 1:10-CR-00406, 2020 WL 2394096, at *4–5 (N.D. Ga. May 12, 2020) (66-year-old defendant with high blood pressure and obesity had extraordinary and compelling reasons due to those serious medical conditions placing her at high risk to COVID-19); United States v. Pena, ___ F. Supp. 3d ___, 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (finding that defendant's age of 60, high blood pressure, and hyperlipidemia satisfied extraordinary and compelling reasons due to a serious medical condition); United States v. Sawicz, ___ F. Supp. 3d ___, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding that defendant's "particular vulnerability to complications from COVID-19 because of his hypertension, constitute[d] an 'extraordinary and compelling reason'").

In Pena, the defendant was 60 years old with high blood pressure and had about two-years remaining on his sentence for a robbery conviction. Pena, 2020 WL 2301199, at *4. He required medication for his high blood pressure and also had hyperlipidemia. Id. The court granted compassionate release because his high blood pressure met the policy statement for a serious physical or medical condition, with his age and hyperlipidemia further increasing his risk to COVID-19. Id. at 4–5. Likewise, in Anderson, the defendant who was granted compassionate release had high blood pressure for which he was taking medicine and was also obese. Anderson,

5

2020 WL 2521513, at *1. The court considered that he had one year remaining on his sentence, the offense was non-violent, and he had no disciplinary infractions while in custody. Id. at *5. The court determined that his high blood pressure was a substantial physical or medical condition, increasing his risk to COVID-19 with the difficulty to socially distance in prison. Id.

Like Anderson and Pena, Mr. White has high blood pressure that puts him at risk of serious illness or death from COVID-19 if he remains in prison, a risk enhanced by his age and respiratory infection. And like Anderson, only one year remains on his custody sentence and he has no disciplinary infractions while in custody. Although each compassionate release case is individualized and highly fact specific, these cases support the Court's finding that Mr. White has a serious physical or medical condition to justify his release. See U.S.S.G. § 1B1.13 n.1(A)(ii).

### Section 3553(a) factors

The Court must also consider the relevant the § 3553(a) factors in light of his current status, 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13, and the policy statements recommend further that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); see United States v. Kincaid, 802 F. App'x 187, 188 (6th Cir. 2020).

Mr. White's robbery offense was serious, however it was non-violent and involved no weapons or any direct force. Mr. White was 57 years old at the time and in criminal history category VI. (See PSR ¶¶ 22–56.) Today, he is 60 years old. The Court notes that he previously served in the Marines. Most importantly, he has taken advantage of the resources in prison and has no disciplinary infractions. Mr. White has participated in and completed classes in both drug education and drug treatment while in custody. 18 U.S.C. § 3553(a)(1). This shows his rehabilitation while in custody.

6

There is little need for further deterrence given his age, background, and exemplar conduct in prison. 18 U.S.C. § 3553(a)(2)(B). At 60 and with serious health problems, the Court finds that he is not a danger to the safety of any other person or the community, 18 U.S.C. § 3553(a)(2)(C); U.S.S.G. § 1B1.13(2), as his age shows that he is substantially less likely than younger offenders to recidivate following release, see United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, at 3, 24 (Dec. 2017) (rearrest rates decline by more than half for offenders age 60 or older who were in the criminal history category VI, and rates for robbery offenders experience "a sharp decline" after the age of 50). His health problems are best addressed outside the prison context. 18 U.S.C. § 3553(a)(2)(D). The Court believes that Mr. White is a very different person than he was on the day of his sentencing.

With good-time credit, his anticipated release date is less than one year away, July 8, 2021. The Court finds that continued detention is no longer appropriate. 18 U.S.C. § 3553(a)(2)(D). Based on the information before the Court, the three years he has served in prison has provided adequate deterrence, promoted respect for the law, and provided just punishment. Id. § 3553(a)(2). In light of Mr. White's serious medical conditions, the Court finds that any additional time spent in prison would be "greater than necessary." Id. § 3553(a); see Pena, 2020 WL 2301199, at *4.

## II. CONCLUSION

For the above reasons, the Court finds that Mr. White has extraordinary and compelling reasons for compassionate release, is not a danger to others or his community, and his release is consistent with the policy statements and the § 3553(a) factors. Accordingly, Mr. White's Motion for Compassionate Release (Doc. No. 35) will be granted. Mr. White's term of supervised release will begin immediately with the following additional conditions: he will spend the first 14-days in

quarantine according to CDC recommendations and the first three-months of supervised release will be on home detention. All other conditions of supervised release will remain the same.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE